UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GOEBEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:09-CV-106 (CEJ) |
| ) | |
| REV. ROBERT JOHNSTON, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of defendant Catholic Archdiocese of St. Louis to dismiss Counts IV through VI of the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion and the issues have been fully briefed.

I. **Background**

Plaintiff, a resident of Illinois, filed this action in the Third Judicial Circuit Court for Illinois, alleging that he was sexually abused by Reverend Robert Johnston between 1979 and 1982, when he was a minor. At the time of the alleged abuse, Rev. Johnston had been ordained as a priest by the Archdiocese of St. Louis, and worked at various parishes in the St. Louis metropolitan area. Plaintiff alleges that the abuse occurred in hotel rooms in Illinois, at a lake house in St. Louis County, and at a St. Louis Cardinals baseball game. Plaintiff asserts claims of assault and battery (Count I), negligence (Count II), and intentional infliction of emotional distress (Count III) against Rev. Johnston. He also asserts claims of negligent hiring (Count IV), negligent retention and supervision (Count V), and negligent entrustment and breach of fiduciary duty (Count VI) against the Archdiocese.

Asserting jurisdiction based on diversity of citizenship, the defendants removed the action to the United States District Court for the Southern District of Illinois, which subsequently transferred the matter to this Court. The Archdiocese filed a motion to dismiss the plaintiff's claims in Counts IV, V and VI of the original complaint. On April 13, 2009, plaintiff received leave of Court to file an amended complaint, which added a new claim against the Archdiocese alleging intentional failure to supervise its clergy (Count VII). The Archdiocese subsequently filed an answer to Count VII of the amended complaint, but renewed its motion to dismiss Counts IV through VI.

II. <u>Legal Standard</u>

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) <u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance… dismissals based on a judge's disbelief of a complaint's factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. <u>Id.</u> A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974. <u>See also</u> <u>id.</u> at 1969 ("no set of facts" language in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965.

III. **Discussion**

Defendant Archdiocese argues that the claims asserted in Counts IV through VI are precluded by Missouri law. In support of this argument, defendant points to the Missouri Supreme Court decision in Gibson v. Brewer, 952 S.W.2d 239 (Mo. banc 1997). In Gibson, the plaintiff alleged sexual abuse by a priest and filed suit against both the priest and the Catholic Diocese of Kansas City-St. Joseph. The trial court dismissed the claims against the Diocese, and plaintiff appealed. The Missouri Supreme Court affirmed the dismissal of the claims of negligent hiring/ordination/retention and negligent failure to supervise. In doing so, the court recognized that "[r]eligious organizations are not immune from civil liability for the acts of their clergy. . . If neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability." Id. at 246 (citations omitted). The court held that the negligent hiring claim against the Diocese was properly dismissed because "[q]uestions of hiring, ordaining, and retaining clergy…necessarily involve interpretation of religious doctrine, policy, and administration." Id. at 246-47. Likewise, the court found that adjudicating the reasonableness of a church's supervision of its clergy "would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision." Id. at 247 (citations omitted). The court reasoned that "[s]uch excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment." Id. at 247. Finally, the court held that the Diocese was not liable for the priest's conduct under the theory of respondeat superior, because "intentional sexual misconduct…[is] not within the scope of employment as a priest, and [is] in fact forbidden." Id. at 246 (citations omitted).

In a diversity action, the Court "must follow state law as announced by the highest court in the state." Bennett v. Hidden Valley Golf & Ski, Inc., 318 F.3d 868, 874 (8th Cir. 2003). In determining which state law to apply, the Court must "follow the choice-of-law approach prevailing in the state in which it sits." Dorman v. Emerson Elec. Co., 23 F.3d 1354, 1358 (8th Cir. 1994). The Court agrees with defendant that Missouri law governs this dispute.[1] Further, based on the Missouri Supreme Court's decision in Gibson, it is clear that Missouri courts would dismiss plaintiff's claims against the Archdiocese in Counts IV through VI.

However, "[i]f there is a federal constitutional issue, a federal court has the duty to make its independent inquiry and determination." Doe CS v. Capuchin Franciscan Friars, 520 F.Supp.2d 1124, 1135 (E.D. Mo. 2007). In Doe CS, plaintiff brought a negligence action against a religious organization, contending that it should have known that a member of its clergy was sexually abusing minors. The court found that Gibson (which, if followed, would bar plaintiff's claims) was not controlling, as the court was not bound by the state court's interpretation of the First Amendment. Id. The court found that allowing the negligent supervision claim to proceed against the organization would not violate either the Establishment Clause nor the Free Exercise clause of the First Amendment. Id. The same conclusion was reached in Doe SD v. Salvation Army, 2007 WL 2757119 (E.D. Mo. 2007), in which the plaintiff asserted claims of negligence and breach of fiduciary duty against a religious organization based on allegations of sexual committed by a member of the organization's clergy. Neither

---

[1] Missouri examines the following factors in determining which state has the most significant relationship to the dispute at issue: (1) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile and residence of the parties; and (d) the palce where the relationship between the parties is centered. The Court, being presented with no argument to the contrary by plaintiff, is convinced by defendant's arguments that these factors weigh in favor of applying Missouri law.

of these addressed the issue of whether the Missouri Supreme Court would bar such claims against a religious organization on grounds other than the First Amendment. In a third case filed in this District, the court, relying on Gibson, held that the First Amendment precluded claims against a church for the negligent hiring and negligent supervision of its clergy. See Doe HL v. James, 4:05-cv-2032-CAS (E.D. Mo. August 15, 2006). In that case, however, the court did not make an independent inquiry and determination of the federal constitutional issue.

The Archdiocese contends that the Court should likewise refuse to make an independent First Amendment inquiry in this case. In support of its argument, the Archdiocese points to John Doe 70 v. Roman Catholic Diocese of Jefferson City, et al., No. 03-04031-CV-C-SOW (W.D. Mo. 2004)(See Exhibit B of Defendant's Memorandum in Support). In John Doe 70, the court found that it lacked authority to reconsider the First Amendment issue and was required to accept the First Amendment analysis in Gibson. The court concluded that a federal court, sitting in diversity, must follow the law as pronounced by the highest court of the state when considering state law claims, even when such claims "happen to implicate First Amendment issues." Id. Thus, the court viewed the ultimate issue before it as a state law issue, i.e., whether Missouri law allowed negligence-based claims against religious organizations to succeed. Because the Missouri Supreme Court found in Gibson that Missouri law did not recognize such claims, the court dismissed plaintiff's claims.

While the Court recognizes the distinction the court in John Doe 70 is attempting to make between state law claims which touch upon federal issues and purely federal law claims, the Court nevertheless believes that it has a "duty to make [its] own independent inquiry and determination of the First Amendment issue" in this case. See Aftanase v. Economy Baler Co., 343 F.2d 187, 192 (8th Cir. 1965)(Minnesota court's

interpretation of Fourteenth Amendment is not binding on federal court). The Court believes this principle applies even when the Court is sitting in diversity and applying state law. See Doe CS, 520 F.Supp.2d at 1135 (noting that the duty to make an independent First Amendment inquiry applies in a diversity case involving state law claims). The Gibson decision was based solely on the First Amendment. Had the Gibson court found that the negligence-based claims would have also been barred under an alternative, purely state law basis, then the Court would be obligated to abide by that decision. However, the Gibson court explicitly noted that its decision was not based on the religious clauses of the Missouri Constitution. See Gibson, 952 S.W.2d at 246. And although the court indicated that the Missouri's religious clauses are, generally, "more restrictive" than the First Amendment, it is not clear from either the Gibson opinion, or the text of the religious clauses themselves, that plaintiff's claims would be barred by the Missouri Constitution. See V.A.M.S. Const. Art. 1, §§5-7. Therefore, the Court will perform its own First Amendment analysis in determining whether each of plaintiff's claims should be dismissed.

### A. Negligent Hiring, Retention, and Supervision of Rev. Johnston

In Count IV of the amended complaint, plaintiff alleges that the Archdiocese was negligent in hiring Rev. Johnston because it was, or should have been, aware that Rev. Johnston harbored dangerous sexual propensities towards the children he would be supervising during his employment. In Count V of the amended complaint, plaintiff alleges that the Archdiocese was negligent in retaining and supervising Rev. Johnston[2].

---

[2]In its memorandum in opposition to this motion, plaintiff contends that Count V includes not only a negligent supervision of Rev. Johnston claim, but also a negligent supervision of children claim. The Court has closely examined the amended complaint and does not believe that plaintiff has alleged a negligent supervision of children claim. The negligent supervision claim in Count V relates only to the Archdiocese's alleged negligence in supervising Rev. Johnston during his employment.

The Court finds that allowing these claims to proceed would violate neither the Establishment Clause nor the Free Exercise Clause of the First Amendment. State action does not violate the Establishment Clause of the First Amendment "so long as it: (1) has a secular….purpose, (2) neither advances nor inhibits religion in its principal or primary effect, and (3) does not foster an excessive government entanglement with religion." United States v. Corum, 362 F.3d 489, 495 (8th Cir. 2004). A cause of action relating to the negligent hiring, retention, or supervision of an employee who sexually abuses children in his care undoubtedly has a secular purpose, and neither advances nor inhibits religion in its principal or primary effect. Further, the Court does not believe that this action fosters an excessive entanglement with religion. Indeed, "[t]he First Amendment does not shield employment decisions made by religious organizations from civil court review…where the employment decisions do not implicate religious beliefs, procedures, or law." Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 471 (8th Cir. 1993). The Archdiocese "has not offered any religious explanation for its actions which might entangle the court in a religious controversy in violation of the First Amendment." Id. at 472. Plaintiff's claims in Count IV and V of the amended complaint do not violate the Establishment Clause.

Likewise, proceeding with these claims would not violate the Free Exercise Clause of the First Amendment. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." Employment Div. Dep't of Human Res. v. Smith, 494 U.S. 872, 877 (1990). The First Amendment "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." Id. at 879. Indeed, "[f]or the Free Exercise Clause to be implicated a defendant must show that there is a conflict between the conduct that is required by law and that which is prescribed or prohibited by a religious principle." Doe SD, 2007 WL 2757119 at *5. The Archdiocese

does not allege any sincerely held religious principle that would be in conflict with the prosecution of plaintiff's claims. Plaintiff's negligent hiring, retention, and supervision claims do not violate the Free Exercise Clause of the First Amendment. Accordingly, the motion to dismiss as to these counts is denied.

### B. Breach of Fiduciary Duties and Respondeat Superior Claims

In Count VI of the amended complaint, plaintiff asserts a claim titled "negligent entrustment/breach of fiduciary duty/respondeat superior". Plaintiff contends that the alleged abuse occurred in the course of Rev. Johnston's employment with the Archdiocese. Plaintiff states that he originally met Rev. Johnston through activities and functions sponsored by the Archdiocese. Plaintiff claims that Rev. Johnston occupied a special and fiduciary relationship with the Archdiocese. Plaintiff also contends that the Archdiocese, when becoming aware of plaintiff's allegations, failed to report Rev. Johnston to law enforcement officials and merely transferred Rev. Johnston to a different parish.

The claim that plaintiff is attempting to assert in Count VI is somewhat unclear. To the extent plaintiff is pleading agency liability under the respondeat superior doctrine, the Gibson court refused to recognize such a claim in a clergy sexual abuse case because sexual misconduct is "not within the scope of employment of a priest". Gibson, 952 S.W.2d at 246. This decision was not based on a federal constitutional issue and is binding on the Court.

Likewise, to the extent that plaintiff is bringing a breach of fiduciary duty claim in Count VI, the Missouri Court of Appeals has refused to recognize such a claim in cases against clergy for sexual misconduct. See H.R.B. v. J.L.G., 913 S.W.2d 92, 98 (Mo. App. E.D. 1995). However, the opinions of this court are split as to whether the decision in H.R.B. is controlling on this matter. In Doe SD, this court allowed a breach

does not allege any sincerely held religious principle that would be in conflict with the prosecution of plaintiff's claims. Plaintiff's negligent hiring, retention, and supervision claims do not violate the Free Exercise Clause of the First Amendment. Accordingly, the motion to dismiss as to these counts is denied.

### B. Breach of Fiduciary Duties and Respondeat Superior Claims

In Count VI of the amended complaint, plaintiff asserts a claim titled "negligent entrustment/breach of fiduciary duty/respondeat superior". Plaintiff contends that the alleged abuse occurred in the course of Rev. Johnston's employment with the Archdiocese. Plaintiff states that he originally met Rev. Johnston through activities and functions sponsored by the Archdiocese. Plaintiff claims that Rev. Johnston occupied a special and fiduciary relationship with the Archdiocese. Plaintiff also contends that the Archdiocese, when becoming aware of plaintiff's allegations, failed to report Rev. Johnston to law enforcement officials and merely transferred Rev. Johnston to a different parish.

The claim that plaintiff is attempting to assert in Count VI is somewhat unclear. To the extent plaintiff is pleading agency liability under the respondeat superior doctrine, the Gibson court refused to recognize such a claim in a clergy sexual abuse case because sexual misconduct is "not within the scope of employment of a priest". Gibson, 952 S.W.2d at 246. This decision was not based on a federal constitutional issue and is binding on the Court.

Likewise, to the extent that plaintiff is bringing a breach of fiduciary duty claim in Count VI, the Missouri Court of Appeals has refused to recognize such a claim in cases against clergy for sexual misconduct. See H.R.B. v. J.L.G., 913 S.W.2d 92, 98 (Mo. App. E.D. 1995). However, the opinions of this court are split as to whether the decision in H.R.B. is controlling on this matter. In Doe SD, this court allowed a breach

of fiduciary duty claim to proceed, finding that the decision in H.R.B. was based on an erroneous First Amendment analysis. See 2007 WL 2757119 at *10, n.8. Subsequently, in Doe CS, this court found that, based on H.R.B., breach of fiduciary duty claims against clergy for sexual misconduct are not cognizable under Missouri law. See 520 F.Supp.2d at 1132-33.

In H.R.B., the Missouri Court of Appeals examined case law from other jurisdictions on both sides of the issue, and stated that "[w]e align ourselves with the jurisdictions that have refused to recognize breach-of-fiduciary-duty actions against clergy for sexual misconduct." H.R.B., 913 S.W.2d at 98. The court then noted that, "[i]t is true the alleged behavior of defendant was not religiously motivated." Id. Nevertheless, the court found that "other causes of action are available for these acts (i.e., intentional infliction of emotional distress, childhood sexual abuse), which do not require the trial court to determine…whether the archbishop and the church breached their fiduciary duties towards their parishioners…and abused their position of trust and confidence.". Id. at 98-99. The court subsequently noted that "[t]he First Amendment does not allow secular courts to judge sectarian matters." Id. at 99.

Plaintiff contends that the Court should disregard the H.R.B. court's refusal to recognize the breach of fiduciary duty claim because the court employed a faulty First Amendment analysis. It is clear that the decision in H.R.B. was guided by the court's reluctance to inquire into the religious aspects of the relationship between the members of the church, including plaintiff, and the church's clergy. Whether such an inquiry would violate the First Amendment is, indeed, a question that this Court has authority to answer.

However, the Court does not believe that the decision in H.R.B. was based solely on the First Amendment. The H.R.B. court refused to recognize the cause of action,

in part because of the constitutional issues it would raise, but also because "other causes of action are available" that the court viewed as better alternatives. See H.R.B., 913 S.W.2d at 98-99. The court noted that "while it may be argued that it requires no excessive entanglement with religion to decide that reasonably prudent clergy of any sect do not molest children, allowing actions for breach of fiduciary duty in such situations places courts on the slippery slope and is an unnecessary venture, since existing laws…provide adequate protection for society's interests." Id. Thus, the court in H.R.B. acknowledged that a breach of fiduciary duty claim in these instances might not violate the First Amendment, but still refused to recognize such claims.

The appellate court's holding in H.R.B. is the "best evidence" of what Missouri law is on this point. See Allstate Ins. Co. v. Blount, 491 F.3d 903, 908 (8th Cir. 2007)("Decisions of intermediate state appellate courts are persuasive authority that we follow when they are the best evidence of what state law is."). The Court finds, as it did in Doe CS, 520 F.Supp.2d at 1133, that Missouri law does not recognize a cause of action for breach of fiduciary duties in a sexual abuse cases against clergy.[3]

Finally, to the extent that plaintiff is pleading the related claim of negligent entrustment, the Court finds that it too must be dismissed. Although plaintiff titled his claim in Count VI as "Negligent Entrustment/Breach of Fiduciary Duty/Respondeat Superior", there are no factual allegations within Count VI that actually plead the claim

---

[3]Another potential deficiency in plaintiff's breach of fiduciary duty claim is that plaintiff failed to clearly allege that a fiduciary relationship existed between plaintiff and Rev. Johnson and the Archdiocese. In Count VI, plaintiff claims only that "Defendant, Rev. Johnston, occupied a special and fiduciary relationship between himself and the Co-Defendant, the Archdiocese of St. Louis." Because the Court finds that H.R.B. is dispositive of this issue, it need not determine whether plaintiff's factual allegations throughout the rest of the complaint, and incorporated into Count VI, are sufficient to allege such a fiduciary relationship.

of negligent entrustment.[4] Further, in arguing against the dismissal of Count VI, beginning on page seventeen in his memorandum in opposition to the motion, plaintiff refers to his claim in Count VI only as a breach of fiduciary duty claim, even though the Archdiocese had argued in its motion to dismiss that plaintiff failed to plead the elements of negligent entrustment. Plaintiff appears to have abandoned his negligent entrustment claim; but even if he has not, the Court finds that it must be dismissed for failure to state a claim.

IV. <u>Conclusion</u>

The Court concludes that plaintiff's negligent hiring, retention, and supervision claims in Count IV and Count V of the amended complaint state a valid claim for relief. The Court does not believe that prosecuting these claims would offend the First Amendment. Plaintiff's claims in Count VI are dismissed for the reasons stated above.

Accordingly,

**IT IS HEREBY ORDERED** that the motion [#50] of defendant Catholic Archdiocese of St. Louis to dismiss is **granted as to Count VI of the amended complaint and is denied as to Count IV and Count V of the amended complaint**.

**IT IS FURTHER ORDERED** that Count VI of the amended complaint is **dismissed for failure to state a claim** as to defendant Catholic Archdiocese of St. Louis.

---

[4]To plead negligent entrustment, plaintiff must show that "(1) the entrustee is incompetent, (2) the entrustor knew or had reason to know of the incompetence, (3) there was an entrustment of a chattel, and (4) the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff." <u>McHaffie By and Through McHaffie v. Bunch</u>, 891 S.W.2d 822, 825 (Mo. banc. 1995).

**IT IS FURTHER ORDERED** that the motion [#40] of defendant Catholic Archdiocese of St. Louis to dismiss Counts IV, V, and VI of the original complaint is **denied as moot**.

---
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 21st day of August, 2009.